## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KATHY JANE REYNOLDS, | ) | CASE NO. 5:16CV01119 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Kathy Jane Reynolds ("Plaintiff"), challenges the final decision of Defendant,

Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying her

application for Disability Insurance Benefits ("DIB") and Period of Disability ("POD") under

Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned

United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for

preparation of a Report and Recommendation.  For the reasons set forth below, it is

recommended that the Commissioner's final decision be VACATED and this matter

REMANDED for further proceedings.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

1

# I.  PROCEDURAL HISTORY

On August 21, 2012, Plaintiff filed applications for DIB and POD alleging a disability onset date of September 13, 2007.[2]  (Transcript ("Tr.") 181-82).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 135-137; 143-147; 148-149).

On December 18, 2014, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE"), testified.  (Tr. 57-89).  On January 22, 2015, the ALJ issued a written decision finding Plaintiff was not disabled.[3]  (Tr. 8-26).  The ALJ' s decision became final on March 22, 2016, when the Appeals Council declined further review.  (Tr. 1-6).

On May 11, 2016, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 14, 17).  Plaintiff  asserts a single assignment of error:

• Whether the ALJ performed a proper pain and credibility analysis.

---

[2]  Plaintiff previously applied for a period of DIB benefits.  On January 26, 2011, an administrative law judge (ALJ) issued a decision denying that application.  (Tr. 11, 93-107).  "The prior decision involved the same parties, facts, and issues," and became administratively final "as an unfavorable review was issued by the Appeals Council on December 21, 2011, and Plaintiff did not file a civil action in federal court.  (Tr. 11, 126-27).

[3]  In her decision, the ALJ explained that the prior decision from January 2011 was binding under *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997), because Plaintiff had presented "no new and material evidence pertaining to the unadjudicated period that changes the prior residual functional capacity" (RFC), or the most Plaintiff could do despite her impairments.  (Tr. 11).  Thus, in this case, the ALJ's decision at issue covers the period from January 26, 2011, to her date last insured, December 21, 2012.  (Tr. 11, 13).

2

(Doc. No.14 at 5-8).

## II.    EVIDENCE

**A.    Personal and Vocational Evidence**

Plaintiff was born on February 23, 1964.  (Tr. 63). She has an eleventh grade education and is able to communicate in English.  (Tr. 64)  She has past relevant work as a housekeeper, fast food worker, and nurse's aide.  (Tr. 78).

**B.    Medical Evidence**

After sustaining a work-related injury in September 2007, Plaintiff presented with severe left-sided back pain that occasionally radiated to her hips.  (Tr. 273).  Plaintiff underwent decompression surgery of L4-S1 in May 2008.

In March 2011, Plaintiff sought treatment from Mark Weiner, M.D., and reported that she had been declared at maximum medical improvement in a workers' compensation case.  (Tr. 361).  Dr. Weiner noted decreased range of motion in her back and paraspinous muscle spasms, but did not detect any distinct trigger points.  (Tr. 361).  Dr. Weiner recommended that Plaintiff place a treadmill by her TV so that she could walk 10-15 minutes a day to start, and then try to maintain a higher level of activity as tolerated.  (R. 361).  He also adjusted her medication (Tr. 362).

On September 9, 2011, chiropractor Stephen Pruni, DC completed a form for Plaintiff's claim from the Ohio Bureau of Workers' Compensation.  (Tr. 517).  Plaintiff's listed impairments consisted of lumbosacral sprain, herniated disc, and substantial aggravation of pre-existing degenerative disc disease of the lumbar spine.  (Tr. 517).  It was noted that Plaintiff was unable to sit, stand, or walk more than thirty (30) minutes at a time without changing

positions; Plaintiff was unable to bend, squat, crawl, climb, or reach at all; Plaintiff was unable to lift or carry up to five (5) pounds only occasionally; and Plaintiff was unable to use her feet for repetitive movement of foot controls.  (Tr. 517).  Dr. Pruni concluded that her restrictions were permanent.  (Tr. 517).

During an office visit on October 12, 2011, Dr. Pruni noted significant findings on physical examination including severely restricted lumbar range of motion, and positive orthopedic and neurological tests (Tr. 404).

On December 8, 2011, Plaintiff presented to Jeffrey Cochran, D.O., complaining of left sided low back pain.  (Tr. 291).  Plaintiff reported that she had relief after surgery until she started physical therapy, which "pushed her to the limit"; that her leg gave out on her 2-3 times per month; that daily activities such as sleeping, working, picking up her granddaughter, housework, and yard work, were all limited; and that her symptoms were aggravated by coughing, sneezing, bending, lifting, twisting, standing, walking, and changing positions.  (*Id.*).  Plaintiff was diagnosed with degenerative disc disease and a herniated lumbar disc.  (*Id.*).  X-rays of the lumbar spine showed diffuse degenerative changes throughout and narrowing of the L5-S1 disc space.  (*Id.*).

Plaintiff was seen by a pain management physician, Robert Felden, D.O on February 22, 2012.  (Tr. 290).  A physical examination revealed decreased range of motion in all planes, including flexion, extension, rotation, and side bending.  (Tr. 290).

Nicholas Varrati, MD examined Plaintiff on April 27, 2012.  (Tr. 518-22).  Plaintiff reported that she had undergone multiple injections including epidurals and nerve blocks with no significant improvement.  (Tr. 518-19).  Additionally, Plaintiff reported that her left leg gives out

4

frequently causing her to fall.  (Tr. 519).  On examination, there was tenderness to palpation over the L4-5, and L5-S1, worse on the left.  (Tr. 520).  Sensation to light touch was decreased over the left lateral calf down into the left lateral foot, and straight leg raises were positive bilaterally.  (*Id.*).  Dr. Varrati concluded that the Plaintiff was capable of standing or sitting only 15 minutes at a time, driving only 10 miles, walking only half a block, and incapable of bending or squatting.  (Tr. 522).

Plaintiff sought treatment from Dr. Pruni for back and left leg pain on numerous occasions throughout 2012.  She was consistently diagnosed with chronic low back pain with left lower extremity radiculopathy, status post nerve root compression.  (Tr. 285-290, 326, 330-33).  In December 2012, Plaintiff's back pain was 4 out of 10, and she had pins-and-needles in her toes.  (Tr. 326).  She had no new symptoms to report, no difficulty sleeping, and was tolerating her medications without any side effects.  (Tr. 326).

Over the relevant period, Plaintiff was seen routinely by pain management, and her reported pain scores fluctuated between 4/10 and 8/10.  (Tr. 361, 360, 358, 357, 312, 296, 353, 351, 518, 349, 347, 345, 343).

**D.    Hearing Testimony**

During the hearing, Plaintiff testified to the following:

- Plaintiff testified that during the period at issue pain woke her up at night.  (Tr. 67-68).

- Plaintiff had to lay down during the day, usually two to three times for about a half an hour.  (Tr. 68).

- Plaintiff took pain medication which made her drowsy.  (Tr. 69).  As a result, she did not drive.  (*Id.*).

5

- Plaintiff's daughter moved in with her and took care of most of the household chores and shopping.  (*Id.*).  Plaintiff would try to do chores such as dust once a week but her husband did all the laundry and outside work.  (Tr. 72).

- Plaintiff used to work in the garden but could no longer do so.  (*Id.*).  Plaintiff also testified that she continues to participate in physical therapy.  (*Id.*).

- She stated that she initially had improvement after her back surgery but eventually her pain returned.  (Tr. 75).

- Injections for pain did not work.  (*Id*).

- Plaintiff described how her pain limits her.  She can sit for 15 minutes but only stand for about 10 minutes, if that.  (Tr. 74).  Walking is limited to five minutes at a time.  (*Id.*).  Plaintiff testified that she can lift 5 pounds.  (*Id.*).  Her pain level was a 7 out of 10 on an average day (Tr. 75).

The VE testified Plaintiff had past work as a housekeeper, fast food worker, and nurse's aide.  (Tr. 78).  The ALJ then posed the following hypothetical question:

The first hypothetical question concerns an individual of the claimant's age, this is a younger individual with a limited education, and past relevant work as we specified.  In this first hypothetical, this individual will be limited to sedentary exertion; reduced by the further limitation they should never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs; can only occasionally stoop, crouch, or crawl; and should not perform any work requiring fast paced high production standards; and must be permitted to work in a flexible pace.

* * *

[T]here should be no high production quotas, such as piece work or assembly line work.

(Tr. 78).

The VE testified the hypothetical individual would not be able to perform Plaintiff's past work as housekeeper, fast food worker, and nurse's aide.  (Tr. 78-79).  The VE explained however that the hypothetical individual would be able to perform other representative jobs in the economy, such as account clerk, charge account clerk, and call center operator.  (Tr. 79-80).

### III.    STANDARD FOR DISABILITY

6

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while he/she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbott*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

7

impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

Here, Plaintiff was insured on her alleged disability onset date, January 27, 2011 and remained insured through December 31, 2012, her DLI.  (Tr. 13-14).  Therefore, in order to be entitled to POD and DIB, Plaintiff must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 27, 2011through her date last insured of December 31, 2012 (20 CFR 404.1571 et seq.).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, bilateral foraminal stenosis, and a thin thoracic syrinx (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders, ropes or scaffolds or more than occasionally climb stairs or ramps, stoop, crouch or crawl. The claimant cannot perform work requiring fast-paced, high production standards and must be permitted to work at a flexible pace, meaning the claimant is precluded from assembly line or piece work.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on February 23, 1964 and was 48 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

(Tr. 11-20).

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy*, 594 F.3d at 512; *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the

10

regulations is grounds for reversal.  *See, e.g., White*, 572 F.3d at 281; *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS: Whether the ALJ properly assessed Plaintiff's credibility

Plaintiff asserts a single assignment of error, arguing that the ALJ failed to properly assess her credibility.  It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk,* 667 F.2d at 538.  The evaluation of an individual's alleged symptoms entails a two-step process.  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).[4]  First, an ALJ must determine whether a claimant has a "medically determinable

---

[4]     SSR 16-3p supercedes SSR 96-7p, 1996 WL 374186 (July 2, 1996), which was in effect at the time of the January 28, 2015 hearing. While there is not unanimity on the issue, the Court applies SSR 16-3p retroactively as it agrees with the rationale

11

impairment" that could reasonably produce a claimant's alleged symptoms.  *Id.* at *3.  Second,

"[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms," an

ALJ must "examine the entire case record," including (1) the objective medical evidence; (2) an

individual's statements about the intensity, persistence, and limiting effects of symptoms; (3)

statements and other information provided by medical sources and other persons; and (4) any

other relevant evidence in the individual's case record. *Id.* at *4.  When considering a claimant's

own statements about the intensity, persistence, and limiting effects of her symptoms, an ALJ

should evaluate "whether the statements are consistent with objective medical evidence and the

other evidence."[5]  *Id.*

---

of another district court that has addressed the issue. *See Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("where new rules merely clarify unsettled or confusing areas of the law, retroactive application is proper" and finding that "SSR 96-7p and SSR 16-3p are substantially similar"); accord *Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666 at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."); *contra Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at n. 6 (E.D. Tenn. May 18, 2016) (declining to apply SSR 16-3p retroactively). By its very language, the primary purpose of SSR 16-3p appears to be the elimination of the term "credibility" from policy to clarify that an evaluation of symptoms does not constitute an examination of an individual's character. 2016 WL 1119029 at *1.

[5]     Factors to be considered in evaluating a claimant's symptoms include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication used to treat the pain or symptoms; (5) treatment other than medication; (6) measures other than treatment used to alleviate pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029 at *7.

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016).  "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.")(citations omitted).

Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 249; *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite some other evidence for denying a claim for pain in addition to personal observation"). "In evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'"  SSR 16-3p, 2016 WL 1119029 at *9.  Rather, an ALJ's "decision must contain *specific reasons* for the weight given to the individual's symptoms… and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

13

Here, the ALJ determined that Plaintiff had severe physical impairments, which included degenerative disc disease of the lumbar spine, bilateral foraminal stenosis, and a thin thoracic syrinx.  (Tr. 14).  The ALJ concluded that these determinable impairments could reasonably be expected to cause the alleged symptoms.  (Tr. 15).  However, the ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (*Id.*).

The Court has reviewed the administrative decision in its entirety and concludes that ALJ's credibility analysis fails to meet the standard of clarity described in SSR 16-3p, as the decision is marked by the absence of a cohesive and structured credibility analysis.  While the Commissioner maintains *post hoc* that the ALJ asserted several reasons for finding Plaintiff's allegations less than fully credible, the reasons now being cited by the government, instead of being clearly articulated by the ALJ and precisely supported by the record, were sprinkled haphazardly throughout the decision.  *See Blackburn v. Colvin*, Case No. 5:12CV2355, 2013 WL 3967282 at * 8 (N.D. Ohio July 31, 2013) ("arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration.").  Further, insofar as it is possible to extract reasons from the administrative decision, they are unreasonable and/or lacking in factual or legal authority.

The Commissioner's *post hoc* reasons why the ALJ found that Plaintiff's allegations of pain lacked credibility are as follows:

> (1) Plaintiff consistently sought conservative treatment and she reported a positive response to that treatment;

14

(2) Plaintiff stopped taking several pain medications and declined recommended treatment;

(3) Her allegations are contrary to the objective evidence.  There is no evidence that Plaintiff walked with an abnormal gait.  There is no evidence of diminished motor strength, and straight leg raise tests were generally negative.

(Commissioner's Brief on the Merits, Doc. No. 17 at 9-11).  The Court will address each of these reasons in turn.  As described below, each of them suffers from some defect or combination of defects: either they were not clearly articulated by the ALJ, they are not reasonable, and/or they are lacking in a legal or factual basis.

### A. The Commissioner's First Reason

The Commissioner's first reason for finding Plaintiff's allegations less than fully credible is that Plaintiff consistently sought conservative treatment, and she reported a positive response to that treatment.  This reason, while stated concisely by the Commissioner, was not clearly articulated in the ALJ's decision with support from the record.  Rather, the ALJ's discussion fails to precisely identify the evidence that is relevant to the credibility analysis.

For instance, in the first paragraph on page 16 of the decision, the ALJ asserts that "[t]he claimant's conservative treatment and reported positive response to such treatment during the period for adjudication is inconsistent with her allegations as to the severity of her functional limitations." (Tr. 16).  It is not immediately apparent what record evidence the ALJ relied upon to reach this conclusion.  It is not until the following paragraph, where a single report of decreased pain in April 2011 is mentioned, that the ALJ provides any specific citations to the record that could conceivably support the idea that Plaintiff had a positive response to treatment. (*Id.*).  Then, buried in the third paragraph following, after discussing various pieces of evidence whose relationship to Plaintiff's credibility and her "positive response to treatment" is unclear

15

and unarticulated,[6] the ALJ cites additional evidence which allegedly shows a positive response to treatment– i.e. her medication was helpful and Plaintiff reported decreased pain from June 2012 to April 2013.  (Tr. 16).  In the paragraph that follows, the ALJ addresses Plaintiff's chiropractic treatment, which afforded her little, if any, improvement, and past injection treatments, which also afforded no relief.  (Tr. 17).  Finally, in the second full paragraph on page 16 of the administrative decision, the ALJ again mentions that Plaintiff reported improvement from June 2012 to April 2013, citing the same evidence already cited.  The ALJ then concludes by again noting that the "conservative treatment modalities offered to the claimant and her statement as to the effectiveness of such treatment are inconsistent with her allegations as to the severity of her functional limitations."  (Tr. 17).

In the Court's view, by failing to cohesively set forth her reasoning with support from the record, the ALJ fails to meet the standard of clarity set forth in SSR 16-3p.  Without the benefit of the Commissioner's *post hoc* annotations, it is not at all clear which evidence cited by the ALJ is meant to support the claim that Plaintiff's treatments were effective.  While the Commissioner attempts to point the Court in the direction of the purportedly relevant portions of the decision from which a plausible credibility analysis might be extracted, the Court does not accept this after the fact effort to cure the deficiencies of the administrative decision.

---

[6]     The ALJ addresses the problems Plaintiff had with her medications (e.g. G.I. side effects, concerns about hallucinations as a side effect, and ineffectiveness), examination results, and treatment options proposed by Plaintiff's orthopedist. (Tr. 16).

In addition, the Court disagrees with both the legal and factual bases of the Commissioner's first reason.  First, the ALJ failed to provide substantial evidence showing a pattern of improvement as a result of conservative treatment.  The Court's review of the record reveals that over the period in question, Plaintiff's pain ratings, rather than improving, fluctuated erratically.  Medical records from the relevant period show Plaintiff rated her pain as follows:

- March 10, 2011        6/10.  Pins and needles, pain across the lumbosacral region and numbness and tingling into the left foot. (Tr. 361).
- April 15, 2011        5/10.  Aching pins and needles low back into left lower extremity. (Tr. 360).
- June 24, 2011        5/10.  Pins and needles, shooting in nature, low back into left lower extremity (Tr. 358)
- August 16, 2011        5/10.  Aching pins-and-needles.(Tr. 357)
- August 30, 2011        6-8/10.  Sharp, aching, tingling, and pins and needles.  (Tr. 312).
- October 7, 2011        6/10.  (Tr. 296)
- October 18, 2011        8/10.  Continuous, aching, stabbing in her low back and in her left leg.
- February 22, 2012        8/10.  Aching and pins and needles discomfort in the lumbosacral region and into the left foot.  (Tr. 353).
- March 27, 2012        4/10.  Aching pain radiating into the left lower extremity.  (Tr. 351).
- April 27, 2012        6-7/10 (Tr. 518)
- June 28, 2012        8/10.  Continuous aching pins and needles stabbing in her low back and down in to her left leg. (Tr. 349).
- August 24, 2012        6/10.  Aching stabbing shooting pains in her left iliac crest, aching in left calf.  (Tr. 347).
- October 24, 2012        4/10.  Aching stabbing shooting in her left iliac crest and down in to her foot, pins and needles in her foot.  (Tr. 345).
- December 27, 2012        4/10.  Aching in her low back pins and needles in her left toe.  (Tr. 343).

These records do not demonstrate a steady decline in pain.  And therefore, the Court rejects the factual basis for the ALJ's claim that Plaintiff's pain symptoms improved over time.

17

The Court also disagrees with the notion that a regimen of conservative treatment is necessarily inconsistent with a severe disability, and the cases cited by the Commissioner to support this idea are not persuasive in this instance.  In one case, the Sixth Circuit affirmed an ALJ's adverse credibility determination in light of evidence that, *inter alia*, "conservative treatment was successful."  *Villarreal*, 818 F.2d at 463.  It was noted that a treating physician stated that the claimant's condition was "fairly stable" and that "when the patient does exercise mildly and stays on his diet, his blood sugar will stay down."  *Id.*  Here, while it appears Plaintiff pursued only conservative treatment, the ALJ failed to cite substantial evidence to show that it was successful.  As such, *Villarreal* is inapposite.  The Commissioner cites another Sixth Circuit case for the proposition that an ALJ may discredit a claimant's subjective allegations of disability in light of the mildness of treatment.  *See Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014).  The idea is that if a claimant's treatment was mild, it is reasonable to conclude that her ailments were also mild.  *Id.  Blaim* is distinguishable.  In *Blaim*, mildness of treatment was one of several reasons the ALJ discounted claimant's credibility, including that the claimant demonstrated persistent non-compliance and persistent disregard for his doctor's advice and the objective evidence was inconsistent with his allegations.  *Id.*  In the present case, unlike *Blaim* and as described below, the ALJ did not clearly state additional reasons that reasonably undermine Plaintiff's credibility.

In sum, the Court concludes that the Commissioner's first reason has no merit.

18

**B. The Commissioner's Second Reason**

The Commissioner also argues that the ALJ properly determined that Plaintiff's credibility was lacking in light of Plaintiff's discontinuation of certain medications and her refusal to follow recommended treatment.  With respect to the discontinuation of certain medications the ALJ noted the following:

> Dr. Felden prescribed the claimant Kadian, a narcotic-based pain medication, Cymbalta and Neurontin following a March 10, 2011 office visit (B7F/24-25).  While she reported decreased pain and no side effects associated with this regimen in April 2011 (B7F/23), the claimant stopped taking Kadian due to complaints of gastrointestinal side effects in June 2011 (B7F/21).  The claimant stopped taking Cymbalta in August 2011 due to fears of hallucinations, a potential side effect identified on the medication's packaging, which there is no evidence the claimant experienced (B7F/20).  She also discontinued her use of Neurontin in October 2011 after losing a prescription and later indicating that this medication was ineffective (B7F/18).

(Tr. 16).  The above paragraph provides no clear reasoning as to how Plaintiff's discontinuation of Kadian, Cymbalta, and Neurontin undermines her credibility.  Further, it is not apparent how Plaintiff's discontinuation of these medications bears on her credibility at all, since it is not evident that Plaintiff unreasonably refused to follow medical advice.  Rather, as the evidence showed, she based her decision to cease using these medications in light of their side effects or ineffectiveness.  It is incumbent on the ALJ to set forth reasons that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight."  The ALJ did not meet this standard here.

The Commissioner also maintains that the ALJ properly discounted Plaintiff's credibility in light of Plaintiff's failure to pursue additional treatment recommendations which included epidural steroid and facet block injections.  As noted by the Commissioner, a failure to

seek treatment for a condition is a factor that may be considered in assessing credibility.  *See Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990).  In this case, a treatment note from December 2011 shows that Dr. Cochran "discussed treatment options with [Plaintiff]: live with as is, medication, physical therapy, possible injections [including] lumbar epidural steroid injections, nerve root block or facet joints, then possible radiofrequency ablation if relief with facet block."  (Tr. 315-16).  The ALJ pointed out that Plaintiff did not pursue these recommendations.  As such, the government argues that Plaintiff's failure do so shows that the severity of her condition was not as extreme as Plaintiff claimed.

This argument is rejected.  The full extent of the ALJ's analysis on this point is the following:

> The claimant did not seek treatment apart from medications prescribed by Aultman physicians and her brief course of chiropractic therapy during the period for adjudication.  While treatment modalities including epidural steroid and facet block injections were recommended, the claimant did not pursue these recommendations.

(Tr. 17).  In conclusion, the ALJ stated

> The conservative treatment modalities offered to the claimant and her statement as to the effectiveness of such treatment are inconsistent with her allegations as to the severity of her functional limitations.

This discussion falls short of articulating the conclusion that Plaintiff was less than entirely credible.  As the Commissioner argues it *post hoc*, Plaintiff is less than fully credible because she did not pursue the treatment modalities noted above.  However, a careful reading of the above quoted passage shows the ALJ did not clearly articulate this conclusion in her opinion.  Rather, the ALJ asserts she was not credible because Plaintiff reported her conservative treatment was effective.  This is clearly different than saying she was not credible because she failed to follow her doctor's recommendations.

20

In addition, based on the Court's review of the record, it is unclear if Dr. Cochran made a "recommendation."  While the Commissioner characterizes the additional treatment modalities as "recommendations," the record shows they were something less than that.  Dr. Cochran did not "recommend" these treatments.  Treatment notes indicate that Dr. Cochran "discussed" her treatment options, which included the "possibility" of injections.  In addition, the Commissioner fails to acknowledge that Plaintiff had tried those various treatment options in the past, and either had no improvement or a negative outcome as a result.  Plaintiff's medical records show that in the past she received multiple epidurals and nerve blocks in the past with no significant improvement.  (Tr. 519).  Following her first nerve block, Plaintiff reportedly suffered numbness and tingling to her left leg down to her toes.  (*Id.*).  Given this evidence, it was unreasonable for the ALJ to challenge Plaintiff's credibility based on Plaintiff's failure to follow up on the additional treatment options, which had not helped her in the past.  *See Rogers*, 486 F.3d at 249 ("[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence.").

**B. The Commissioner's Third Reason**

As a third reason the Commissioner argues that Plaintiff's allegations are contrary to the objective evidence, citing to the following portion of the ALJ's decision:

> The exertional and postural restrictions set forth in the residual functional capacity accommodate the consistent clinical findings of examining sources.  Physical examinations of the claimant by her treating physicians and Dr. Pruni consistently observed the claimant's tenderness to palpation and spasm of the lumbar paraspinal muscles and diminished range of motion of the lumbar spine B7F; B5F; B4F/14, 30 and B16F/5.  On occasion, the claimant demonstrated unrestricted and painless range of motion of the lumbar spine (B7F/8, 10).  Physicians also observed sensory deficits of the claimant's left lower extremity on multiple examinations and found her deep tendon reflexes at the patella and Achilles to be diminished (B5F/5-6; B7F/ 10).  The claimant has not exhibited signs of more significant neurological deficits.  No treating physician

21

observed abnormalities of the claimant's gait or station and in December 2011, Dr. Cochran noted that the claimant walked with a normal, narrow based gait (B5F/5-6). Similarly, no treating physicians have observed the claimant's diminished motor strength or atrophy on examination. The claimant at times exhibited positive straight leg raise on examination; however, these occasions were isolated and resulted in reports of lower back, rather than radicular pain (B5F/5-6 and B16F/5). Straight leg raise testing throughout the period for adjudication was generally negative (B7F/4, 21-22, 23 and 24-25). As noted in the ALJ's decision, there is no evidence that Plaintiff walked with an abnormal gait. There is no evidence of diminished motor strength, and straight leg raise tests were generally negative.

(Tr. 17).

Based on the above paragraph, the Commissioner now asserts that "[t]he ALJ also noted that despite Plaintiff's claims of debilitating and constant back pain, no physician ever observed that Plaintiff walked with an abnormal gait." The Commissioner's interpretation of this paragraph is incorrect. Nowhere does the ALJ state that the various medical findings contained the above quoted passage are inconsistent with Plaintiff's allegations of "debilitating and constant back pain." Rather, as described by the ALJ, the above quoted discussion relates specifically to the exertional and postural restrictions set forth in the RFC. By failing to frame the above quoted discussion in relation to the question of Plaintiff's credibility, the ALJ failed to meet the standard of clarity set forth in SSR 16-7p.

In addition, even if the ALJ had made it clear that the above paragraph related to the issue of Plaintiff's credibility, it is not self-evident that the various clinical findings described above are inconsistent with Plaintiff's allegations of debilitating pain. Neither the Court nor the ALJ has the medical expertise to conclude, for example, that in this particular case, the absence of a finding that Plaintiff had an abnormal gait necessarily undermines her claims of debilitating back pain.

22

Further, the Commissioner has inaccurately represented the record.  While the Commissioner asserts that Dr. Cochran observed a "*normal*, narrow based gait," the Court's review reveals that Dr. Cochran did not observe a "*normal*, narrow based gait."  Instead, Dr. Cochran stated that Plaintiff's gait was "narrow based and steady."  The Commissioner has provided the Court with no basis to conclude that a "narrow based and steady" gait is normal.

In sum, the Court rejects the Commissioner's argument that the ALJ properly found Plaintiff's allegations inconsistent with the objective evidence.

### D. Discussion of the factors set forth in 20 C.F.R. § 404.1529(c)(3)

Finally, the Court agrees with Plaintiff's argument that the ALJ failed to adequately discuss the factors relevant to this case.  The factors in 20 C.F.R. § 404.1529(c)(3) include "(i) your daily activities; (ii) the location, duration, frequency, and intensity of your pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) any measure you use or have used to relieve your pain or other symptoms . . . and (vii) other factors concerning your functional limitations and restrictions due to pain or other symptoms."

In this case, although the ALJ questioned Plaintiff about her activities of daily living during the hearing, her daily activities were not discussed in the written decision.  It is instructive that Plaintiff's family reportedly performed most household chores, yard work, and grocery shopping.  (Tr. 68-69, 291).  There is also evidence that she could no longer work in her garden.  (Tr. 72).  Further, while the ALJ briefly addressed Plaintiff's pain symptoms, she did

not take a full longitudinal view of Plaintiff's pain ratings over the relevant period.  As described *supra*, Section VI.A., the record provides a long view of Plaintiff's pain complaints over the relevant period.  Although the ALJ highlighted a handful on instances where Plaintiff reported some relief, it is not evident that she considered the full history.

Additionally, there is evidence that Plaintiff's symptoms were aggravated by coughing, sneezing, bending, lifting, twisting, standing, walking, and changing positions.  (Tr. 291).  This was not addressed by the ALJ.  And while noting that Plaintiff at times reported positive results from her medications, the ALJ did not thoroughly discuss the associated side effects.  For instance, there is evidence that Plaintiff's medications made her very sleepy.  (Tr. 68).

On remand, the ALJ should engage in a complete discussion of all the factors relevant to Plaintiff's allegations of pain.

//

//

//

//

//

//

//

//

//

24

## VII.    CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's final decision be

VACATED and this matter REMANDED for further proceedings consistent with this Report

and Recommendation.


                                        _s/ Jonathan D. Greenberg_____
                                        Jonathan D. Greenberg
                                        United States Magistrate Judge

Date: <u>March 21, 2017</u>

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

25